## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MARY MILLER,<br><br>       Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., *et al*.,<br><br>       Defendants. | Civil No.:  09-2728 (PJS/RLE)<br><br>**DECLARATION OF TRANS UNION LLC REPRESENTATIVE WILLIAM R. STOCKDALE** |

sf-2788135

I, WILLIAM STOCKDALE, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called upon to do so, could and would competently testify thereto.

## BACKGROUND

2. Since September of 1989, I have been employed by Trans Union LLC ("Trans Union"). My present title is Vice President of Data Acquisition Services.

3. Trans Union is one of the world's leading business intelligence providers, maintaining one of the larges collections of consumer information. Trans Union maintains and updates information regarding virtually every market-active consumer in the United States. Among other things, Trans Union prepares and maintains credit reports on consumers.

4. My job responsibilities include receiving and processing various consumer based financial information. In addition, I am in charge of managing a large group of TransUnion Associates responsible for the data quality.. As a result of my work, I am knowledgeable about Trans Union's business activities, including Trans Union's contractual relationships with LexisNexis Risk & Information Analytics Group Inc. ("LNRIAG") and LNRIAG and Trans Union's business interactions. I am also familiar with Trans Union's policies and procedures for the compilation, retention, reinvestigation and disclosure of consumer credit information.

5. Credit reports generally contain broad information categories including, among others:

(a) <u>identification information</u> about consumers, such as the consumer's name, social security number, and address;

(b) <u>trade line information</u> consisting of information from creditors regarding their transactions and experiences with consumers relating to accounts such as credit cards, automobile or other installment loans, or mortgages; and

(c) <u>public record information</u> such as bankruptcies, civil judgments, foreclosures, and tax liens.

6. The vast majority of items included in credit reports prepared by Trans Union relate to trade line information. Trade line information is generally supplied to Trans Union directly by companies who, without compensation from Trans Union, report to Trans Union on the companies' own accounts with consumers.

## LNRIAG'S PUBLIC RECORD INFORMATION COLLECTION FOR TRANS UNION

7. Unlike trade line information which is supplied directly to Trans Union by companies that maintain accounts with consumers, public records information is not supplied to Trans Union by the courthouses or clerks' offices. Instead, Trans Union gathers or contracts with vendors to gather public record information. Historically, Trans Union employees collected some public record information regarding civil judgments and tax liens from sources such as courthouses. Other public record information has been collected for Trans Union by a variety of different vendors. Pursuant to a contract with Trans Union, LNRIAG has been one of the vendors that collect select civil judgment, tax lien and bankruptcy filing information for Trans Union.

8. The information about a public record that LNRIAG[1] collects for Trans Union is generally limited to:

- the originating court or office (e.g., Blue Earth County Conciliation Court);
- the case or proceeding number;
- the record type (e.g., civil judgment; satisfaction of judgment);
- event date of the public record item;
- the names shown in the public record as associated with the proceeding (e.g., plaintiff and defendant; tax authority and taxpayer on a tax lien);
- if applicable, the dollar amount of the obligation; and
- the address shown in the public record for the defendant.

9. LNRIAG provides data regarding public records information to Trans Union in bulk, at contractually agreed upon intervals for different public records sources. Using proprietary algorithms, Trans Union then analyzes the identifying information provided by LNRIAG to determine whether Trans Union can, consistent with the statutory text of the FCRA, associate the public record information with, or "match" the record to, a specific credit file.

10. The information that LNRIAG provides to Trans Union is not "about" specific consumers; it is about public records. Trans Union does not solicit or accept any

---

[1] I am informed that the public records and CDV activities of LNRIAG described herein have, since January 1, 2010, been performed by LexisNexis Risk Data Retrieval Services LLC. Because I have no personal knowledge of that fact, I continue to refer to LNRIAG as the current provider of such services.

advice or conclusions from LNRIAG regarding whether any record should be include in any specific credit file. Trans Union's determination of whether to associate the public record information in any specific credit file is entirely its own.

11.   LNRIAG never furnishes information to Trans Union about LNRIAG's transactions or experiences with any consumer, let alone in the ordinary course of LNRIAG's business. LNRIAG does not report any accounts between it and any consumer as being closed or delinquent, or otherwise provide information — negative or otherwise — about LNRIAG's experiences with consumers. LNRIAG provides only select information about public records made available by applicable public records laws.

**LNRIAG'S ON-DEMAND SERVICES FOR TRANS UNION**

12.   Pursuant to the contract between Trans Union and LNRIAG, LNRIAG performs on-demand public record information reverification (or reinvestigations) for Trans Union as part of a "consumer dispute verification" or "CDV" process. Consumers about whom Trans Union prepares consumer reports have the right to dispute information contained in such report. When a dispute relates to information provided by an entity regarding that entity's transactions or experiences with a consumer, Trans Union notifies the entity that provided the information of the consumer's dispute regarding the information. In some cases, consumers dispute the accuracy of information about public records, such as civil judgments, that Trans Union has matched to a file. When a consumer disputes a public record appearing in the consumer's file, Trans Union pays a public records data vendor to reinvestigate the disputed item in the originating court or records office.

13. In a public record CDV, Trans Union electronically transmits to the public records data vendor, such as LNRIAG, information about the public record in question, such as the court, case number and file type, as well as the name and address in the credit file with which Trans Union has associated the public record.

14. The public records data vendor is required by contract with Trans Union to locate the public record identified in the CDV, to compare the consumer identifying information and the case or proceeding information with that found in the public record, and to show in the vendor's response to Trans Union any differences between the information supplied by Trans Union in the CDV request and the information then found in the public record of the case or proceeding. For example, if the CDV request supplies the name "John R. Smith," but there is no middle initial on the public record, the vendor is expected to return the name "John Smith." Thus, if the public record information it finds at the public information source does not match up to the information provided to LNRIAG by Trans Union in the CDV, LNRIAG supplies Trans Union with a CDV response revised to reflect the information as it is then found in the public record.

15. When the public records data vendor returns the completed CDV response to Trans Union, the vendor includes a numeric "response code" that indicates how the request was resolved. One of the response codes is "[Insert LNRIAG/TU-specific code number] – Status Not Changed." A response bearing that code signifies that, as of the time of the response, information available from public sources indicates that the case status remains as described in the CDV request, i.e., that the status of the judgment or lien has not changed, according to publicly available records, from the case status as provided

in the CDV request. Public records data vendors use the status not changed response code whenever the current status of the case remains the same (for example where the judgment remains unsatisfied), even where the vendor returns different consumer identifying information (such as name or address) from the public record than was included in the CDV request.

16. Trans Union does not take any response code from a public records data vendor — including a response code of Status Not Changed — as the public records data vendor's indication that Trans Union has properly matched the public record with the proper credit file, or as a recommendation as to how Trans Union should resolve the consumer's dispute. Trans Union does not solicit or accept "instructions" from public records data vendors as to whether to delete or modify its association of public record information with specific credit files. Trans Union, not its public records data vendors such as LNRIAG, determines whether to disassociate public record information from specific credit files based on its own analysis of the information in its databases, and the information supplied by both the disputing consumer and the public records data vendor, not from the public records data vendor's response code. The information Trans Union considers includes discrepancies between the name and address in its credit file and the debtor name and address returned by the vendor in its CDV response.

**TRANS UNION DOES NOT CONSIDER LNRIAG AN FCRA "FURNISHER."**

17. In meeting its obligations under the FCRA, Trans Union does not treat LNRIAG as a "furnisher of information." Trans Union does not consider the information

that LNRIAG transmits to Trans Union in bulk to represent LNRIAG's transactions or experiences with any consumer. Trans Union does not consider LNRIAG to have any specific or first hand knowledge of the events underlying the information contained in the public records data collected and transmitted by LNRIAG. Consequently, Trans Union operates with respect to LNRIAG in ways that differ from how Trans Union operates with entities it considers to be "furnishers of information" — those entities that have accounts, transactions or experiences with consumers.

**TRANS UNION DOES NOT DEAL WITH LNRIAG IN THE SAME WAY IT DEALS WITH COMPANIES IT CONSIDERS "FURNISHERS OF INFORMATION" UNDER THE FCRA.**

18. **Routing of consumer disputes.** When a consumer dispute relates to an account reportedly maintained by the consumer with a "furnisher of information," Trans Union notifies the account issuer and asks that the account issuer investigate the consumer's contention. When a consumer dispute relates to a public record included in a consumer report, Trans Union does not always direct the CDV request to the same public records data vendor that supplied the public record information on the item. Where the CDV request relates to public records of a bankruptcy, Trans Union does not employ vendors to obtain current information, but rather has its own employees obtain such information from PACER.

19. **Payments for CDV responses.** Trans Union pays public records data vendors, including LNRIAG, a fee for completing a CDV request. Since "furnishers of information" have a statutory obligation to investigate disputes with respect to

information they reported to Trans Union, Trans Union does not pay such "furnishers" any fee for completing the investigation.

20. **Use of e-OSCAR.** Under the FCRA, the nationwide consumer reporting agencies are required to maintain an automated reinvestigation system through which furnishers of information to that consumer reporting agency may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. The credit reporting industry's current web-based electronic dispute processing system is known as e-OSCAR ("Online Solution for Complete and Accurate Reporting"). When a consumer dispute relates to an account reportedly maintained by the consumer with a "furnisher of information," Trans Union uses e-OSCAR to notify the account issuer of the dispute. Trans Union does not use e-OSCAR to convey investigation requests to LNRIAG, and LNRIAG does not use e-OSCAR to transmit results of any CDV back to Trans Union. Instead, Trans Union and LNRIAG exchange encrypted data via secure file transfer protocols (FTP).

21. **Requests for information correction.** As amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACT Act"), the FCRA requires furnishers to delete, modify, or permanently block the reporting of disputed information that is found to be inaccurate, incomplete or cannot be verified. It is Trans Union's understanding that the information publicly available about public records is controlled by the courts and other public records repositories, not by LNRIAG. As such, Trans Union neither requests nor expects that LNRIAG will modify or delete anything in the

information publicly available about judgments, liens or bankruptcy – only that LNRIAG report to Trans Union what the publicly available information reflects.

22.  On occasion, a consumer provides evidence to Trans Union showing to Trans Union's satisfaction that the information publicly available from official sources about a public record is wrong. This can occur, for example, where the consumer has an apparently authentic copy of an order vacating a judgment, but that order for some reason, such as a clerk's error, is not noted on the court's website reporting judgments. Where Trans Union concludes that publicly available information is wrong and removes the public record information from the consumer's credit file, Trans Union does not communicate that conclusion to LNRIAG. Instead, Trans Union "cloaks" by computer code the public record information such that the information may no longer be reported to the credit file.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 5, 2010 at 1:14 Pm.

_____
WILLIAM R. STOCKDALE