**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| MARY MILLER,<br><br>           Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., *et al*.,<br><br>           Defendants. | Civil No.:  09-2728 (PJS/RLE)<br><br>**DECLARATION OF KATHLEEN M. CENTANNI** |

sf-2825103

I, Kathleen M. Centanni, declare and state as follows:

1. Since May 2003, I have been employed as a Compliance Manager for Experian Information Solutions, Inc. ("Experian"), formerly known as TRW Information Systems ("TRW"). From August 2000 to May 2003, I held the positions of Internal Auditor and Internal Auditor Senior in Experian's Internal Audit Department. I began my career with TRW/Experian in September 1990 as Credit and Collection Manager. During my tenure as Credit and Collection Manager in Revenue Management Services, I managed several customer (subscriber) support departments, including Collections, Cash, Adjustments and Manual Billing. Prior to joining TRW, I spent seventeen years with one of the nation's largest retailers and credit grantors, Sears Roebuck & Co. During that time, I was responsible for managing several credit and collection departments as well as Credit Authorization, where thousands of consumer applications for credit and consumer credit reports were evaluated.

2. Based upon my experience with Experian, I am very familiar with Experian's policies and procedures for the compilation, retention, reinvestigation and disclosure of consumer credit information. I am also knowledgeable about Experian's contractual relationship with LexisNexis Risk & Information Analytics Group Inc. ("LNRIAG") and LNRIAG's and Experian's business interactions. The facts set forth herein are based upon my personal knowledge.

3. Experian essentially acts as a storehouse of credit information by storing, retrieving and furnishing data as allowed by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and similar state laws. Experian currently stores approximately 3.7 billion tradelines and 50 million public records, from approximately 11,500 qualified data suppliers, belonging to over 220 million consumers, and receives 1.3 billion updates per month. The vast majority of items included in credit reports prepared by Experian relate to tradeline information. Unlike public record information, tradeline information is generally supplied to Experian directly by companies that have been screened through Experian's membership process to become Experian subscribers

and that, without compensation from Experian, report to Experian on their own accounts, transactions and experiences with consumers.

4.  Experian's database does not store completed credit reports. Instead, the database stores hundreds of millions of items of credit information, each one containing identifying information. Therefore, when a request or an inquiry for a consumer disclosure or a subscriber report is submitted, Experian's database compares and matches the identifying information provided in the inquiry string to the identifying information reported with each item of credit information. Accordingly, a credit report is generated at the time the inquiry for it is received.

5.  Consumers who notify Experian that they question the accuracy of, or challenge any item of information on an Experian credit report have, in effect, initiated the dispute process. As a result of a consumer's dispute, Experian immediately communicates to the source of the consumer's disputes or its current public record vendor and requests an investigation. This process is conducted by Experian through the creation of a Consumer Dispute Verification ("CDV") form, Automated Consumer Dispute Verification ("ACDV") form or an Electronic On-Line Solution for Compliance and Accurate Reporting ("e-Oscar") dispute.

6.  It should be noted that, unlike subscribers that supply Experian with tradeline information about their own accounts, transactions and experiences with consumers, federal and state courts do not supply public record information to the credit reporting agencies. As a result, Experian has entered into a contractual relationship with LNRIAG under which LNRIAG collects and reinvestigates public records information at Experian's request for a fee.[1] On a national scale, LNRIAG collects public record data, including liens, judgments and bankruptcies and subsequently provides this information to Experian in bulk at contractually agreed upon intervals for different public records sources. Using proprietary algorithms, Experian then analyzes the information provided by LNRIAG to determine whether Experian can, with an appropriate level of confidence, associate the public record information with, or "match" the

---

[1] I am informed that the public records and CDV activities of LNRIAG described herein have, since January 1, 2010, been performed by LexisNexis Risk Data Retrieval Services LLC. Because I have no personal knowledge of that fact, I continue to refer to LNRIAG as the current provider of such services.

record to, a specific consumer. In addition, Experian contracts with LNRIAG to verify the current status of a disputed public record by obtaining data from the most current official publicly available records in light of the consumer's dispute.

7. When a consumer disputes a public record item on his Experian credit report, Experian captures information communicated by the consumer and forwards that information to LNRIAG or another public records data vendor in the form of a CDV.[2] The CDV that Experian transmits to LNRIAG includes: (a) information about the public record in question, such as the court, case number and file type; (b) the name and address of the consumer who initiated the dispute and with whom Experian has associated the public record in question; and (c) the reason the consumer has given for disputing the information. LNRIAG locates the public record identified in the CDV and notes the current status of the public record in question, e.g., outstanding, vacated, satisfied, or released. LNRIAG transmits to Experian electronically the results of its investigation. This CDV response to Experian includes, but is not limited to, a combination of the following: (a) an indication as to whether the status of the public record remains the same as what was described in Experian's CDV request; (b) if there has been any change in the status of the identified public record, the nature of the status change (e.g., the judgment described in the CDV has been satisfied, or has been vacated); and (c) the identifying information (name, and if available, address of the debtor) found in the record that is currently publicly available.

8. Experian's National Consumer Assistance Center ("NCAC") reviews each CDV response upon receipt from LNRIAG to determine how Experian will use the information provided by LNRIAG.

9. It should be noted that in all disputes processed by LNRIAG, they do not offer opinions or comments as to whether the information belongs to the disputing consumer, rather LNRIAG provides Experian with the information re-collected from the applicable court.

---

[2] Experian uses ACDV and e-Oscar to process disputes relating to subscribers' own transactions, experiences, and accounts with consumers. Experian does not use ACDVs or e-Oscar to transmit public record disputes to LNRIAG.

Experian does not interpret the information that LNRIAG provides to Experian as being "about" specific consumers; it is about public records. Experian, not its public records data vendors such as LNRIAG, determines whether to associate or disassociate public record information with specific consumers based on Experian's own analysis of the information in its databases, and the information supplied by both the consumer and the public records data vendor, not from the public records data vendor's response code. Experian's determination of whether to associate the public record information with a specific consumer is entirely its own.

10. Experian interprets LNRIAG's response of "status not changed" with respect to a civil judgment to mean, in essence, that the debt is still shown in the public record, and its status as an outstanding judgment has not been changed by another filing in the case, such as a satisfaction. Public records data vendors use the status not changed response code even where the vendor returns different *identifying* information (such as name or address) in the public record than was included in the CDV request, so long as the current *status* of the case remains the same (for example where the judgment remains unsatisfied). Experian does not take any response code from a public records data vendor — including a response code of "status not changed" as the public records data vendor's indication that Experian has properly matched the public record with the individual named in the CDV request, or as a recommendation as to how Experian should resolve the consumer's dispute.

11. In meeting its obligations under the FCRA, Experian treats its subscribers such as banks, credit card issuers, automobile finance companies, and mortgage holders that report information on consumers' accounts with them as "furnishers of information" under the FCRA. Such companies typically provide to consumer reporting agencies, including Experian, information about their customers' management of the credit extended to them. On a periodic basis, those types of companies report to consumer reporting agencies information regarding consumers' accounts, such as account status (i.e., open, closed, charged off), current balance, high balance, credit limit, delinquency status, and payment history.

4

12. LNRIAG never furnishes information to Experian about LNRIAG's transactions or experiences with any consumer, let alone in the ordinary course of LNRIAG's business. LNRIAG does not report any accounts between it and any consumer as being closed or delinquent, or otherwise provide information — negative or otherwise — about LNRIAG's experiences with consumers. LNRIAG provides only select information about public records made available by applicable public records laws.

13. Experian does not consider the information that LNRIAG transmits to Experian in bulk to represent LNRIAG's transactions or experiences with any consumer. Experian does not consider LNRIAG to have any specific or first hand knowledge of the events underlying the information contained in the public records data collected and transmitted by LNRIAG. Consequently, Experian operates with respect to LNRIAG in ways that differ from how Experian operates with entities it considers to be "furnishers of information" — its subscribers that have accounts, transactions or experiences with consumers. For example:

(a) **Routing of disputes.** When a dispute relates to information provided by an Experian subscriber regarding that entity's transactions or experiences with a consumer, Experian notifies the subscriber that provided the information of the consumer's dispute regarding the information. In contrast, Experian does not always direct the CDV request to the same public records data vendor that originally supplied Experian with the public record information at issue in the CDV.

(b) **Payments for CDV responses.** Experian pays LNRIAG a fee for completing a CDV request. Since "furnishers of information" have a statutory obligation to investigate disputes with respect to information they reported to Experian, Experian does not pay such "furnishers" any fee for completing the investigation.

(c) **Use of e-Oscar.** Under the FCRA, the nationwide consumer reporting agencies, including Experian, are required to maintain an automated reinvestigation system through which furnishers of information to that consumer reporting agency may report the results of any reinvestigation resulting from a consumer dispute. The credit reporting industry's

current web-based electronic dispute processing system is known as e-OSCAR ("Online Solution for Complete and Accurate Reporting"). When a consumer dispute relates to an account reportedly maintained by the consumer with a "furnisher of information," Experian uses e-OSCAR to notify the account issuer of the dispute. Experian does not use e-OSCAR to convey investigation requests to LNRIAG, and LNRIAG does not use e-OSCAR to transmit results of any CDV back to Experian. Instead, Experian and LNRIAG exchange encrypted data via secure file transfer protocols (FTP).

(d) **Notice of claims of identity theft.** When a consumer reports to Experian that an item reported in the consumer's Experian credit report was the result of identity theft, Experian is required to notify the "furnisher" of the item that the consumer claims she was the victim of identity theft. Where the item is a consumer account with the subscriber that provided the information, Experian provides notice to the subscriber that the consumer has made a claim of identity theft. Where a consumer claims that a civil judgment about which LNRIAG has supplied information to Experian is the result of identity theft (e.g., the identity thief fraudulently opened an account in the consumer's name, failed to pay the account and failed to respond to a collection complaint, resulting in a judgment), Experian does not provide "identity theft" notice to LNRIAG. Experian does not expect LNRIAG to "block" its reporting of any public record information that Experian has itself determined should be deleted from its file relating to the consumer.

(e) **Requests for information correction.** As amended by the Fair and Accurate Credit Transactions Act of 2003 (the "FACT Act"), the FCRA requires furnishers to delete, modify, or permanently block the reporting of disputed information that is found to be inaccurate, incomplete or cannot be verified. It is Experian's understanding that the information publicly available about public records is controlled by the courts and other public records repositories, not by LNRIAG. As such, Experian neither requests nor expects that LNRIAG will modify or delete anything in the information publicly available about judgments, liens or

bankruptcy – only that LNRIAG report to Experian what the publicly available information reflects as of the time LNRIAG reviews the information in responding to Experian's request.

14. On occasion, a consumer provides evidence to Experian showing to Experian's satisfaction that the information publicly available from official sources about a public record is wrong. This can occur, for example, where the consumer has an apparently authentic copy of an order vacating a judgment, but that order for some reason, such as a clerk's error, is not noted on the court's website reporting judgments. Where Experian concludes that publicly available information is wrong and removes the public record information from the consumer's credit file, Experian does not communicate that conclusion to LNRIAG. Instead, Experian suppresses by computer code the public record information such that the information may no longer be displayed in the consumer's credit report.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 9th, 2010 at Costa Mesa, California.

*[signature]*
Kathleen M. Centanni