**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: 09-cv-2728 PJS/RLE**

| | |
|---|---|
| Mary Miller, | |
| Plaintiff, | **RESPONSE IN OPPOSITION TO** |
| v. | **DEFENDANT LEXISNEXIS RISK &** |
| | **INFORMATION ANALYTICS GROUP,** |
| Experian Information Solutions, Inc., | **INC.'S MOTION FOR SUMMARY** |
| CSC Credit Services Inc., and LexisNexis | **JUDGMENT** |
| Risk & Information Analytics Group Inc., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Mary Miller's claims stem from the continued reporting of a default judgment that had been originally obtained in New York against someone else by the name of Mary Miller, and then docketed in Anoka County, Minnesota as a foreign judgment against Plaintiff. The judgment, contained in the public records section of her consumer credit reports, was disputed by Plaintiff in accordance with the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (hereinafter "FCRA"), as it did not belong to her. In response to her dispute, the Defendant credit reporting agencies, CSC Credit Services, Inc. ("CSC")[1] and Experian Information Solutions, Inc. ("Experian"), engaged Defendant LexisNexis Risk & Information Analytics Group Inc. ("LNRIAG"), who collects, stores, and maintains public records data, to complete an investigation of Plaintiff's dispute.

---

[1] Plaintiff has recently settled her claims with CSC and the parties will be filing a stipulation for dismissal accordingly.

Defendant LNRIAG conducted an investigation and incorrectly verified the foreign judgment as belonging to Plaintiff.

Defendant LNRIAG is now seeking summary judgment on the basis that it does not meet the definition of "furnisher" under the FCRA and therefore cannot be held liable pursuant to 15 U.S.C. 1681s-2(b). Plaintiff opposes Defendant's motion as she can show Defendant meets the FCRA's non-exclusive and broad statutory definition of a "person" and that LNRIAG is in fact a "furnisher" based upon its role in collecting, storing, and maintaining public records data, in addition to investigating disputed information contained in consumer credit reports.

## FACTS

In March 2009, Plaintiff applied for a loan with U.S. Bank to refinance her home mortgage. As part of the application process, U.S. Bank obtained copies of Plaintiff's credit reports with the major credit reporting bureaus. Plaintiff was at that time given a copy of her merged credit report from U.S. Bank and was shocked to see that several accounts and a civil judgment from New York, where she has never lived, were erroneously being reported as belonging to her, in addition to inaccurate personal information.

On or about June 1, 2009, a Notice of Entry and Docketing of Judgment and a Notice of Foreign Judgment from Anoka County Court was sent to Plaintiff, showing that the judgment originally obtained in New York had been entered and docketed in Minnesota. *See Roy Aff. ¶2, Ex. A.* Thereafter, on or about June 12, 2009, Plaintiff sent dispute letters to Defendants CSC and Experian stating that the Capital One accounts and the "New York

County (CV-03091708NY) and/or Anoka County (02-CV-09-4035)" judgments were listed in error and did not belong to her. *See Roy Aff. ¶3, Ex. B, filed under seal.*

Defendants Experian and CSC both communicated notice of Plaintiff's dispute to Defendant LNRIAG pursuant to 15 U.S.C. § 1681i. Specifically, Defendants Experian and CSC sent CDVs (consumer dispute verification forms) to Defendant LNRIAG for investigation. The substance of Plaintiff's dispute in connection with both judgments was that they did not belong to her. The credit reporting agencies ("CRAs"), using code "01 – NOT MINE – PROVIDE COMPLETE ID, STATUS, DATES & AMTS Consumer Notes: Not mine – provide complete ID (D)/I HAVE NEVER LIVED IN NEW YORK," conveyed the disputes to LNRIAG. *See Roy Aff. ¶¶4-5, Ex. C & D, LNRIAG – MILLER 0115 & 0117, filed under seal.* Upon information and belief, Defendant LNRIAG verified the accuracy of the state court judgments as belonging to Plaintiff to both Experian and CSC, without mentioning that this was a foreign judgment from New York, in violation of 15 U.S.C. § 1681s-2(b), and reported back code "803 – Status Not Changed." *See Roy Aff. ¶¶4-5, Ex. C & D, LNRIAG – MILLER 0116 & 0118, filed under seal.* Defendants Experian and CSC thereafter continued to report the Anoka County Judgment on Miller's credit report, prompting Plaintiff to bring this action. *See generally Doc. No. 1, Verified Complaint.*

## ARGUMENT

### I.   Legal Standard

In moving for summary judgment, Defendant must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If the moving party satisfies its burden, the party opposing

3

the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the Court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir.2004).

## II.     The Dispute Process Mandated by the FCRA Requires Participation of a Credit Reporting Agency and a Furnisher.

The FCRA lays out a specific process for the handling of consumer disputes once a dispute is received by a credit reporting agency.  The process begins, per Section 1681i(a), requiring the CRA to conduct a "reasonable investigation" if a consumer disputes "any item" to determine whether the "disputed information" is inaccurate.  The phrase "any item" is not limited to a specific type of information (i.e. personal information, account ownership, payment history, judgments, or bankruptcy records) or portion of a consumer report.   A reasonable investigation triggered by Section 1681i generally requires that the CRA:

> provide notification of the dispute to <u>any person who provided any item of information in dispute</u>, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

*15 U.S.C. § 1681i(a)(1)(A)(emphasis added).*

The FCRA goes on to more specifically require:

> (2) Prompt Notice of Dispute to <u>Furnisher of Information</u>

4

(A) *In general.* Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to <u>any person</u>[2] who provided any item of information in dispute, at the address and in the manner established with the <u>person</u>. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

*15 U.S.C. § 1681i(a)(2)(A)(emphasis added).*

Accordingly, Section 1681i identifies a "furnisher" as "any person who provided any item of information in dispute." The duties of "any person" referenced in Sections 1681i(a)(1)(A) and 1681i(a)(2)(A) are specifically outlined later in the Act in Section 1681s-2(b):

(b) Duties of Furnishers of Information upon Notice of Dispute

(1) *In general.* After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy <u>of any information</u> provided by <u>a person</u> to a consumer reporting agency, <u>the person</u> shall

(A) conduct an investigation with respect to the disputed information…

(emphasis added). Accordingly, the "person" to whom the CRA provides notice of the dispute must conduct an investigation to make a determination concerning the completeness or accuracy of the information.

---

[2] A "person" is explicitly defined in the beginning of the FCRA as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *15 U.S.C. § 1681a(b).* Nowhere within this section is the term "person" limited to lenders or creditors, and nowhere are public records vendors or agents of CRAs excluded.

### III.    The Act is Unambiguous and LNRIAG Meets the Definition of a Person.

Defendant LNRIAG has put forth that Plaintiff's claims against it turn on whether LNRIAG is a "furnisher" under the FCRA and provides an enormous amount of anecdotal data in the form of legislative history and declarations in support of its argument that it is not a furnisher.  However, the real issue is whether Defendant meets the definition of a "person," which is without question clearly and broadly defined in such a way from which Defendant cannot exclude itself because it is a "corporation" or "other entity." *See 15 U.S.C. § 1681a(b).*  In other words, the Court need not look any further than the Act itself, which provides a clear and unambiguous definition of a person to analyze the narrow issue raised by Defendant's motion.

It is a recognized principle of statutory construction that where the language of a statute is plain, clear, and unambiguous, the court should be guided by the ordinary meaning of the words used. *U.S. v. Jones,* 811 F.2d 444, 447 (8th Cir.1987); *Blue Cross Association v. Harris,* 622 F.2d 972, 977 (8th Cir.1980). Where a statute states what a key term "means," all other meanings, ordinary or otherwise, shall be presumed excluded. *Johns-Manville Corp. v. U.S.,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989).  Statutory definitions are given controlling effect, because they are regarded as "authoritative evidence of legislative intent." *Sierra Club v. Clark,* 755 F.2d 608, 613 (8th Cir.1985). "The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Lee v. Ashcroft,* 368 F.3d 218, 222 (3d Cir.2004) (quoting *Valansi v. Ashcroft,* 278 F.3d 203, 209 (3d

Cir.2002)).  Only if the statutory meaning is unclear must the court try to discern Congress' intent using the ordinary tools of statutory construction. *Id.*

The anecdotal evidence before the Court as part of Defendant's motion need not be considered by the Court, and an analysis of congressional intent is not necessary, since the statutory meaning of "person" is expressly defined and serves as "authoritative evidence of legislative intent."  As shown above, the term "person" is broadly defined in the definitions section of the Act, and is then used consistently throughout the portions of the Act that relate to the dispute process described in Sections 1681i and 1681s-2b. Neither term limits its definition to lenders or creditors, and neither excludes public records vendors or agents of a CRA.   The evidence of record is undisputed that Defendant was a person (a corporation or "other entity") who "provided an item of information" (the public record information) to the CRAs that was "in dispute." There is simply no basis to exclude Defendant, and it cites no reliable authority for this proposition.

### IV.    Defendant Furnishes and Verifies Information Contained in Consumer Credit Reports.

The inclusion of Defendant as a "person" who furnishes information within the meaning of the Act is logical based upon the role Defendant plays in the credit reporting industry and the function it serves in providing public records information and subsequently verifying that data.  To be clear, there is no requirement that CRAs include public records information in consumer credit reports.  However, the CRAs do in fact include public records such as bankruptcies, judgments and liens in consumer credit

7

reports that bear upon the individual's credit worthiness.  In order to do so, though, CRAs must seek this information on their own initiative as courts, for example, do not report this type of information in the same way that credit card companies, lenders, and landlords do.  Accordingly, if a CRA wants to include these types of items on consumer credit reports, it utilizes an entity like Defendant LNRIAG, who retrieves, collects and stores this information in its own separate database, and is the source of such information that ends up on consumer credit reports. *See Doc. No. 40, Defendant's Memorandum, at p. 3-4; see also Roy Aff. ¶¶8-9, Ex. G & H, filed under seal.*

Defendant LNRIAG is "the nation's leading provider of public record data and maintains a database of more than 130 million public records including civil judgments, tax liens, evictions, and bankruptcies." *See Roy Aff. ¶10, Ex. I, LNRIAG – MILLER 0167, filed under seal.* It recognizes that the "accurate and timely reporting of public record information is a critical piece of the consumer credit reporting industry," that the information it supplies is used by companies to make credit risk decisions, and that it is imperative that the information is accurate because the presence of absence of a public record is an indicator of credit worthiness. *See Roy Aff. ¶10, Ex. I, LNRIAG – MILLER 0168, filed under seal.* Therefore, according to Defendant's own self-described role, LNRIAG is the source and provider of public records that are contained in consumer credit reports.  In collecting public records data and creating its database, Defendant adheres to certain guidelines in picking and choosing which public records to include,

and therefore does not simply mimic what the court docket contains.[3]   Not only is Defendant LNRIAG the source of public records,[4] it also verifies[5] the public records "to insure the record is accurate and complete" when a consumer disputes the accuracy of a public record in their credit report to the CRA.  *See Roy Aff. ¶10, Ex. I, LNRIAG – MILLER 0167.*

The CRAs' investigation process in accordance with Section 1681i in connection with disputed public records confirms that Defendant LNRIAG is in fact the furnisher of public records information, and that the industry in reality has historically treated it as such.  As discussed above, Section 1681i requires CRAs to provide notification of the dispute to any person who provided any item of information in dispute, and as part of that notification must convey all relevant information regarding the dispute that the CRA received from the consumer.  That is exactly what happened in this case and is what occurs on a regular basis any time Defendants such as CSC and Experian receive a dispute concerning a public record – they contact Defendant LNRIAG electronically by way of a CDV, explain the consumer's specific dispute by code and convey other

---

[3] *See Roy Aff. ¶11, Ex. J, filed under seal.* Of special importance in this case is the fact that per Defendant's "Judgment Collection Guidelines" foreign judgments are listed as an "unacceptable judgment type(s)."

[4] Moreover, the contracts between Defendant LNRIAG and the CRAs show that it is the exclusive provider of public records.   *See Roy Aff. ¶8, Ex. G, LNRIAG – MILLER 003, filed under seal.*

[5] Defendant uses the term "re-collect" in its Memorandum in Support of Summary Judgment.  This is inconsistent, however, with what it puts forth in its own manual describing what it does and is also inconsistent with what actually occurs during the dispute process initiated by a coded CDV specific to the dispute lodged by the consumer and the response or update codes utilized by Defendant. *See Roy Aff. ¶10, Ex. I, filed under seal.*

relevant information provided by the consumer. *See Roy Aff. ¶10, Ex. I, LNRIAG - MILLER 0480-0481, 0510-0512, filed under seal.* Defendant LNRIAG recognizes that this process is their "last chance to correct any errors that may have occurred during the collection process or in the data merge process at the credit bureaus." *See Roy Aff. ¶12, Ex. K,* LNRIAG – MILLER 0604, *filed under seal*.

In this case, for example, after Defendants Experian and CSC received notice of Plaintiff's dispute in June 2009, both sent CDVs to Defendant LNRIAG stating the substance of Plaintiff's dispute in connection with both judgments was that they did not belong to her, using code "01 – NOT MINE – PROVIDE COMPLETE ID, STATUS, DATES & AMTS Consumer Notes: Not mine – provide complete ID (D)/I HAVE NEVER LIVED IN NEW YORK." The CDV or notice of dispute triggered the duties under Section 1681s-2b, causing Defendant LNRIAG to complete its "re-investigation" process to "verify" the information and report the results back to the CRAs using specific response or update codes. *See Roy Aff. ¶10, Ex. I, LNRIAG-MILLER 0167, 0511, filed under seal.* Defendant LNRIAG then used a code indicating "status not changed," and thereby verified the accuracy of the information disputed by Plaintiff.[6]

Thus, while Defendant attempts to separate itself from inclusion and liability under the FCRA by marking the differences between itself and other institutions like credit card companies and banks, a look at the Defendant's exclusive role as the source of

---

[6] It should be noted that at no time did Defendants Experian or CSC provide notice of Plaintiff's dispute to anyone else, such as the court where the judgment was docketed or Capital One, the judgment creditor. The CRAs only provided notice to Defendant LNRIAG, thereby acknowledging it as the source of the information.

public records information in addition to its subsequent participation in the dispute verification process proves that the minor differences are of little consequence compared to the striking similarities.  The similarities, the prime one being the fact that Defendant LNRIAG serves the exact same function or purpose as any other furnisher of information, support a finding that the term "person" was purposely and broadly defined, and includes any entity that provides or furnishes information that is contained in credit reports and bears upon the credit worthiness of consumers.  While Defendant is correct in noting that in the end, the CRA ultimately decides whether it will report the information provided by a person,[7] this feature fails to distinguish it from other types of furnishers as this is the same regardless of whether the information relates to either a public record provided by Defendant LNRIAG or a credit card account with Capital One.  This point also fails to accept that the FCRA clearly imposes separate duties on other "persons" who provide and verify the information contained in credit reports, and not just the credit reporting agencies that actually assemble and produce the reports.

## V.    Courts have Not Excluded Entities Such as LNRIAG from Liability under Section 1681s-2b.

This is an issue of first impression and contrary to Defendant's assertions, no court has ruled that entities such as Defendant LNRIAG who retrieve, collect, store, and verify public records may not be held liable for violations of Section 1681s-2(b).  While Defendant has offered various district court cases in support of its argument, not a single

---

[7] The FCRA requires that both the CRA (pursuant to Section 1681i) and the person that furnished the disputed information (pursuant to Section 1681s-2(b)) conduct reasonable investigations.

one stands for the notion that the term "furnisher" mentioned in Section 1681s-2(b) *only* includes specific persons such as credit card companies and banks, or that "furnisher" is a more exclusive, subcategory of the term "person" which is clearly defined.  It is true that courts have found that banks, credit card companies, and lenders are in fact furnishers of information, but they have not limited the scope to include only those entities as Defendant now asks this Court to do.  Such a limited construction is illogical as it would impose serious and unintended limitations on the remedial nature of the statute so that it would only protect certain portions of a consumer's credit report (i.e. accounts), rather than all information and sections, including public records, that clearly bear upon a consumer's credit worthiness.

For example, the opinion in *Smith v. Indiana v. Indiana Mut. Credit Assn.*, cited by Defendant, does not address the issues raised by this case – and contrary to Defendant's statement, the *Smith* Court did not "reach" a conclusion that to be liable as a "furnisher", a person must convey information to CRAs about that person's transactions or experience with a consumer.  The *Smith* Court was not faced with a factual issue concerning the definition of a "furnisher" or violations of Section 1681s-2(b), and did not have occasion to analyze this issue.  The *Smith* Court was instead faced with a claim specifically brought by a consumer under Section 1692s-2(a)(2) concerning the duty to correct and update information, a duty only applicable to a "person" who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer."  Plaintiff Miller has not raised any claims under Section 1692s-2(a)(2), has not claimed that

Defendant misrepresented its transactions or experiences with her, and Defendant's attempt to overly-emphasize the meaning of a small portion of a couple of district court opinions and infer that their application is broader than it actually is, is simply misguided, misleading, and unsupported by a clear reading of the Act, and has no bearing on the claims brought by Plaintiff in this case.   None of the cases cited by Defendant analyzed the issue present in this case, and none of the cases in any way expressed a holding that the term furnisher was exclusive and limits the statutory definition of "person."[8]

## VI.   The Agencies have Not Limited the Definition of Furnisher to Exclude Entities Such as Defendant LNRIAG.

Even if the Court finds that the statute is not clear on its face, and determines that it must discern Congress' intent, the agencies to which Defendant refers to in its memorandum have not expressed an intent to impose the limited construction of the terms "person" or "furnisher" as LNRIAG claims.   According to 16 C.F.R. § 660.2(c), "furnisher means an entity that furnishers information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."   The definition excludes a few categories of entities under certain circumstances, but does not in any way exclude LNRIAG or any entities that collect, store, and process disputes concerning public records relating to consumers.   Thus, despite the opportunity and intent to limit the scope of the definition, that did not happen.

---

[8] Defendant also cites, for example, *Owner-Operator Ind. Driver's Ass'n, Inc. v. USIS Comm. Servs., Inc.*, 537 F.3d 1184, 1193 (10th Cir. 2008).   However, in that case, the court only allowed evidence related to "industry practice" to be admitted in connection with the willfulness claim, not in connection with establishing liability.

Defendant disingenuously attempts to further limit the scope of the broad definition in 16 C.F.R. § 660.2(c) by advancing a theory based upon a later section that deals only with "direct disputes" under 16 C.F.R. § 660.4.  A direct dispute:

> "means a dispute submitted directly to a furnisher (including a furnisher that is a debt collector) by a consumer concerning the accuracy of any information contained in a consumer report and pertaining to an account or other relationship that the furnisher has or has had with the consumer."

*16 C.F.R. § 660.2(b).*

The case before the Court has nothing to do with a direct dispute to a furnisher.  Rather, the claims are based upon the dispute process under 15 U.S.C. § 1681i that begins with a dispute to a CRA that is communicated to a furnisher with reinvestigation duties under 15 U.S.C. § 1692s-2(b).

In any event, 16 C.F.R. § 660.4 does not stand for the proposition Defendant claims – it does not limit the definition of "furnisher" or change the general definition explicitly stated in Section 660.2(c).  Rather, it states that the requirements under the direct dispute section "do not apply to a <u>furnisher</u>" and then identifies certain situations in which the "furnisher" does not have to conduct a "reasonable investigation" in response to a direct dispute.  To be clear, in no way does this section change the definition of furnisher – only certain duties of furnishers in connection with a specific type of dispute.

## VII.   Plaintiff Seeks Relief Under Federal Rule of Civil Procedure 56(f).

Plaintiff submits the declarations of several witnesses utilized by Defendant in its principal memorandum present new testimony and facts that Plaintiff has not had the opportunity to cross-examine.  Discovery is still ongoing with a cutoff date of July 1, 2010

14

and Plaintiff has noticed the deposition of Defendant's representative, Mark Johnson, to take place on June 4, 2010.  Plaintiff submits that the testimony sought by Plaintiff of Defendant's representative is necessary to allow Plaintiff to fully oppose Defendants' Motion for Summary Judgment, and respectfully requests the Court refrain from ruling until the deposition is taken and Plaintiff has had an opportunity to submit relevant portions thereof that bear weight on the issues presented by Defendant's motion. *See Roy Aff. at ¶13.*

## CONCLUSION

Plaintiff at the very least has raised a genuine issue of material fact as to whether Defendant LNRIAG may be held liable for violations of Section 1681s-2(b), and therefore respectfully requests that Defendant's Motion for Summary Judgment be denied in its entirety.

Dated this 2nd day of June, 2010.      By: s/ Trista M. Roy
                                        **CONSUMER JUSTICE CENTER, P.A.**
                                        Thomas J. Lyons, Esq. (#65699)
                                        Trista M. Roy, Esq. (#0387737)
                                        367 Commerce Ct.
                                        Vadnais Heights, MN 55127
                                        Telephone: (651)770-9707
                                        Facsimile: (651)704-0907
                                        Email: tlyons@lyonslawfirm.com
                                        Email:  tristacjc@aim.com

                                        *Attorneys for Plaintiff*