## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MARY MILLER,<br><br>          Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC., *et al.*,<br><br>          Defendants. | Civil No.:  09-02728 (PJS/RLE)<br><br>**DEFENDANT LEXISNEXIS RISK<br>& INFORMATION ANALYTICS<br>GROUP INC.'S REPLY IN<br>SUPPORT OF MOTION FOR<br>SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff's sole claim against LNRIAG is for violation of § 1681s-2(b) of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), for an allegedly deficient "reinvestigation" of a public record item that she alleges should not have been included in her credit reports.  That claim is predicated on the theory that LNRIAG is a "furnisher of information" as used in that statute.  LNRIAG demonstrated in its moving papers that it is not.  LNRIAG supplies to the credit bureaus only information about public records that it does not relate to consumers.  As plaintiff cannot establish that LNRIAG had any obligation under § 1681s-2(b) on the facts of this case, LNRIAG is entitled to summary judgment.

In opposition, plaintiff adduces no evidence to dispute the evidence that LNRIAG adduced with its moving papers and on which LNRIAG relies.  Instead, plaintiff

1

misconstrues the law and makes a logically inconsistent and facially deficient request to continue the hearing on this motion under Rule 56(f).

    <u>Plaintiff misconstrues the law.</u>  While the FCRA's definitions section (§ 1681a) explicitly defines 32 different terms, "furnisher" is not among them.  Instead, the FCRA's structure as well as undisputed industry practice demonstrate that a "furnisher of information" exposed to liability under § 1681s-2(b) is limited to a person that conveys information "relating to a consumer" — and more specifically information *about that person's transactions or experiences with a consumer* — to a consumer reporting agency.  Plaintiff misinterprets "furnisher," as used in § 1681s-2(b), to include every "person" that supplies any information whatsoever to a consumer reporting agency, even where the "person" does not link the information to a consumer, and even where the person does not draw on its own records of transactions or experience with a consumer.  Plaintiff's argument is inconsistent with the statutory scheme, inconsistent with applicable regulations, and would lead to absurd results.

    <u>Plaintiff fails to raise a triable issue of fact.</u>  LNRIAG's evidence established that it has no transactions or experiences with consumers about which it communicates with credit bureaus.  Nor does LNRIAG communicate *about* consumers.  The uncontroverted declarations of the credit bureau witnesses establish that the bureaus treat LNRIAG's communications as about *public records*, not about *consumers*: the *bureaus*, not LNRIAG, relate to consumers public record information supplied by LNRIAG.  This represents a longstanding practical construction of the statute by multiple heavily FCRA-regulated organizations.  The declarations further establish that each of the nationwide

credit bureaus, along with LNRIAG, consistently operates on the premise that LNRIAG

is *not* an FCRA "furnisher."[1]  Plaintiff adduces no admissible evidence to contradict this

showing and to raise a triable issue of fact.  Plaintiff's bald assertion that LNRIAG

"confirms" the credit bureaus' association of records with consumers is unsupported by

any evidence, and is explicitly contradicted by evidence from all parties to the LNRIAG-

credit bureau communications.

Under well-accepted principles of statutory construction and the uncontroverted

factual record, LNRIAG cannot be held liable under § 1681s-2(b) and its motion for

summary judgment should be granted.

## ARGUMENT

**I.    PLAINTIFF'S CONSTRUCTION OF § 1681s-2(b) IS INCONSISTENT WITH THE ACT, ITS LEGISLATIVE HISTORY, AGENCY COMMENTARY AND THE CASE LAW.**

Plaintiff claims that because the FCRA contains an unambiguous definition of

"person," and because "person" is used in both § 1681i (covering consumer reporting

agency obligations following consumer disputes) and § 1681s-2(b) (covering the

---

[1] Plaintiff's claim that industry practice is relevant only to whether an FCRA violation is willful (and hence irrelevant to statutory construction) is wrong.  (Opp'n 13 n.8.)  *See Yonter v. Aetna Finance Co.*, 777 F. Supp. 490, 492 (E.D. La. 1991) (considering industry practice in granting summary judgment as to FCRA claims).  Other courts have likewise considered industry practice relevant to statutory interpretation.  *See Kohl's Food Stores, Inc. v. Hyland*, 32 F.3d 1075, 1079 (7th Cir. 1994) (Wisconsin Worker's Compensation Act); *S.J. Groves & Sons Co. v. Occupational Safety and Health Rev. Comm'n*, 648 F.2d 95, 97 (2d Cir. 1981) (Occupational Safety and Health Act of 1970); *Columbia Gas Transmission Corp. v. Fed. Power Comm'n*, 530 F.2d 1056, 1059 (D.C. Cir. 1975) (deferring to agency on "matters of law like the meaning of contracts, as on the meaning of statutes, where the understanding of the documents involved is enhanced by *technical knowledge of industry conditions and practices*.") (emphasis added).

obligations of recipients of notices given under § 1681i), the FCRA unambiguously

exposes LNRIAG to liability under § 1681s-2(b) in the circumstances presented here.

Not so. The FCRA's definition of "person" *is* unambiguous — LNRIAG falls within it,

and has not argued otherwise. "Furnisher," though, is not defined in the FCRA. The

varied usage of the term in the FCRA supports use of regulations, legislative history and

evidence of industry practice to divine its meaning in § 1681s-2(b). Application of each

of those resources makes clear that here, § 1681s-2(b) does not afford plaintiff a claim

against LNRIAG.

### A.     Plaintiff Is Wrong That § 1681s-2(b) Unambiguously Applies To LNRIAG.

Plaintiff's entire statutory construction argument is that a definition of "furnisher,"

as used in § 1681s-2(b), can actually be divined, not from § 1681s-2(b) itself, but from a

statutory subheading that applies only to consumer reporting agencies, § 1681i. (Opp'n

4-5.) Plaintiff contends that because a notice requirement imposed on consumer

reporting agencies is labeled "Prompt Notice of Dispute To *Furnisher of Information*,"

that subheading (§ 1681i(a)(2)) "identifies" which persons have obligations under

§ 1681s-2(b). (Opp'n 5.) Plaintiff then offers a truncated portion of § 1681s-2(b) to

argue that any person that has supplied information to any consumer reporting agency

may, when contacted by a consumer reporting agency, be subjected to FCRA

"reinvestigation" obligations. She argues that the FCRA's definition of "person" (a term

found in both § 1681i(a)(2) and § 1681s-2(b)) is unambiguous. She then claims that

because "person" is unambiguous, § 1681s-2's application to LNRIAG is also clear, and

the Court may disregard LNRIAG's showing regarding § 1681s-2's structure, the

regulations interpreting FCRA "furnisher" obligations, the relevant legislative history and

the evidence of industry practice, all of which she dismisses as "anecdotal evidence."

(Opp'n 7.)

Plaintiff's superficial linkage of §§ 1681i(a)(2) and 1681s-2(b) does not contend

with the many provisions of § 1681s-2 that must be considered in construing its terms.

*Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) ("Statutory construction

is a holistic endeavor."); *Ortega v. Holder*, 592 F.3d 738, 743 (7th Cir. 2010) (a statute's

structure provides "[c]ontext, not just literal text" that sheds light on Congressional

intent).  As plaintiff does not dispute, § 1681s-2, "Responsibilities of Furnishers of

Information to Consumer Reporting Agencies," contains multiple provisions that make

sense only if the "furnisher" has an account with a consumer, has transactions and

experiences with a consumer, or supplies information that "relates to" particular

consumers.  (MSJ 13-14.)  At least eleven separate provisions of § 1681s-2 refer to the

furnishing of information about a consumer account, transactions or experiences with a

consumer, or "relating to" a consumer.[2]  Since the FCRA defines more than three dozen

---

[2] *See* 15 U.S.C. § 1681s-2(a)(1)(A) ("any info[] *relating to a consumer*"); *id.* § 1681s-2(a)(1)(B) ("info[] *relating to a consumer*"); *id.* § 1681s-2(a)(2)(A) (furnishing of info about "*transactions or experiences* with any consumer"); *id.* § 1681s-2(a)(4) ("info[]… *regarding a consumer* who has a credit *account*"); *id.* § 1681s-2(a)(5)(A) ("info[]… regarding a delinquent *account*"); *id.* § 1681s-2(a)(5)(B) ("info[] on a delinquent *account*"); *id.* § 1681s-2(a)(6)(B) ("info[] maintained by such person *that purports to relate to the consumer*"); *id.* § 1681s-2(a)(7)(G)(i) ("info[] concerning a *customer's delinquencies*, *late payments*, *insolvency*, *or any form of default*"); *id.* § 1681s-2(a)(9) ("info[]… *on a consumer* "); *id.* § 1681s-2(e)(3)(B) ("info[] *relating to consumers*); *id.* § 1681s-2(e)(3)(D) ("info[] *relating to consumers*") (all emphasis added).

sf-2853587

terms in its definition section (§ 1681a) and elsewhere (*see*, *e.g.*, §§ 1681b(b)(4)(D), 1681g(f), 1681g(g), 1681s-3(d)), but nowhere defines "furnisher" as that term is used in § 1681s-2(b), the varied uses of "furnisher" require extrinsic evidence to construe its coverage. *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000) ("When the meaning of a statute is questionable, it should be given a sensible construction . . . to effectuate [its] underlying purposes," by reference to "the condition of affairs which led to its enactment.") (citations omitted); *Alpine Glass*, *Inc. v. Ill. Farmers Ins. Co.*, No. 06-CV-1148, 2006 U.S. Dist. LEXIS 87775, *12-13 (D. Minn. Dec. 4, 2006) (Schiltz, J.) ("[w]hen a statute is ambiguous, the legislative intent may . . . be determined by examining other factors including the need for the law, the circumstances of its enactment, the purpose of the statute, and the consequences of a certain interpretation.") (citations omitted). In *Alpine Glass*, this Court considered practices prevalent in the auto-glass repair industry at the time the statute was enacted in interpreting the statute there at issue. *See id.* at *12-18.

> **B.** **Plaintiff Fails To Square the Legislative History of FCRA "Furnisher" Provisions, the Agency Commentary Thereon, and The Regulations Promulgated Thereunder With Her Suggested Application of Section 1681s-2(b) to LNRIAG.**

The legislative history of the 1996 FCRA amendments, the statements of the FTC to Congress and recently finalized regulations are, as shown in LNRIAG's moving papers, consistently *inconsistent* with plaintiff's reading. (MSJ 10-11 citing, *inter alia*, *Hearing Before the Subcomm. on Consumer Credit and Ins. of the Comm. on Banking*, *Fin. and Urban Affairs*, *H.R.*, 103rd Cong. 2 (Oct. 20, 1993) (statement of Chairman

sf-2853587

Kennedy) (furnisher amendments directed at "companies *with whom consumers hold accounts*."); Johnson Decl. Ex. A (FCRA Dispute Report) at 4 (FTC statement that "furnishers are *entities that provide information about their customers* to CRAs.") (emphasis added); 16 CFR 660.2(c); S. Rep. 103-209 at 6 (adoption of § 1681s-2(b) "makes particular sense because it is creditors . . . that have *direct access to the facts of a given credit transaction* [and are] . . . best situated to determine whether the information [they] reported was inaccurate or incomplete and *to ensure its correction*.") (quoting with approval the testimony of the FTC's Director of Credit Practices) (emphasis added).)

Plaintiff claims that the FTC's regulations, to become effective on July 1, 2010, contradict LNRIAG's position that it cannot be held liable under § 1681s-2(b) in connection with the public records activity at issue here.  The regulations support, not undermine, LNRIAG's motion.  Part 660 covers "Duties Of Furnishers Of Information To Consumer Reporting Agencies," and extends to any person subject to the FTC's enforcement authority.  16 C.F.R. 660.1; 15 U.S.C. § 1681s(a)(1).  The Part was promulgated pursuant, *inter alia*, to the FTC's Congressionally delegated authority to establish guidelines for "each person that furnishes information to a consumer reporting agency regarding the accuracy and integrity of the information *relating to consumers* that such entities furnish to consumer reporting agencies . . ."  15 U.S.C. § 1681s-2(e)(1)(A) (emphasis supplied); 74 Fed. Reg. 31484, 31525 (2009).  That Part defines "furnisher" as an "entity that furnishes information *relating to consumers*. . ." 16 C.F.R. 660.2(c) (emphasis added).  The FTC's definition of "furnisher" by regulation is entitled to *Chevron* deference.  *Individual Reference Servs. Group*, *Inc. v. FTC*, 145 F. Supp. 2d 6,

24 (D.D.C. 2001) ("Where, as here, the subject matter of the statute falls squarely within the agencies' areas of expertise, and the Regulations were issued as a result of a statutorily-coordinated effort among the agencies, *Chevron* is the governing standard.") (citing *Nat'l Treasury Employees Union v. MSPB*, 743 F.2d 895, 916-17 (D.C. Cir. 1984)).  As LNRIAG's undisputed evidence shows the information that LNRIAG supplies to consumer reporting agencies is neither intended nor understood to "relate to consumers."  LNRIAG thus falls outside the FTC's "furnisher" definition.

Plaintiff's quarrel with LNRIAG's reference to 16 C.F.R § 660.4 to support its interpretation of § 1681s-2(b) as limited to entities that have an account or experience with a consumer (Opp'n 14) is misplaced.  She claims that because § 660.4 applies only to disputes made directly to "furnishers," it is irrelevant here.  What plaintiff misses is that § 660.4 limits a "furnisher's" liability for *direct* consumer disputes to disputes about the "furnisher's" relationship with the consumer.  As plaintiff would have it, LNRIAG — an entity that has *no* relationship with the consumer and provides *only* public record information that it *does not* relate to any consumer — would be subject to broader liability than are "furnishers" as defined in the regulation that receive from consumers *direct* disputes regarding public record information.

### C. Plaintiff Fails To Distinguish The Cases That Contradict Her Construction of Section 1681s-2(b).

Plaintiff claims no court has held that public records vendors are not subject to suit for alleged violations of § 1681s-2(b) [3]  (Opp'n 11.)  That is true.  However, at least one

---

[3] Plaintiff addresses only one of the cases cited by LNRIAG, and then only to point out that the case involved § 16[81]s-2(a)(2) rather than § 1681s-2(b).  (Opp'n 12-13).  This is

sf-2853587

court has explicitly held that a holding company that lacked any accounts or other direct relationships with customers fell outside the definition of "furnisher" on that basis. *See Ransom v. Equifax, Inc*., No. 09-80280, 2010 U.S. Dist. LEXIS 30886, *10-11 (S.D. Fla. Mar. 30, 2010). The numerous other decisions LNRIAG cites (*see* MSJ 5-6) either considered whether "furnisher" is defined in the FCRA or supplied description of the entities to which § 1681s-2(b) applies. LNRIAG falls outside those descriptions. None of the cases arrive at the sweeping scope of § 1681s-2(b)'s coverage plaintiff advocates.

### D.    Plaintiff's Construction of Section 1681s-2(b) Would Lead To Absurd Results.

Plaintiff's construction of § 1681s-2(b) may be assessed by reference to the consequences of adopting that interpretation. *Alpine Glass*, *Inc.*, 2006 U.S. Dist. LEXIS 87775, *12-13 (Schiltz, J.) (looking to, *inter alia*, "the consequences of a certain interpretation" in construing a statute). Plaintiff's construction of § 1681s-2(b) to cover any person providing any item of information to a credit bureau would sweep into that statute court clerks who hand copies of judgments to credit bureau employees, bicycle messengers that collect copies of tax liens from recorder's offices for credit bureaus, and, for that matter, the telephone directory publishers, as telephone directories are used by credit bureaus to update consumer telephone numbers. Each of these actors lacks the

---

(continued…)

a distinction without a difference, as all of § 1681s-2 covers "*[r]esponsibilities of furnishers of information to consumer reporting agencies*." Statutory interpretations are to be reached not by reference to isolated phrases or subsections of the statute, but by reference to the entire statutory scheme. *See United States v. Cooper*, 396 F.3d 308, 313 (3d Cir. 2005).

ability either to "modify" or "delete" such records (§ 1681s-2(b)(1)(E)), as does

LNRIAG, and it would be inconsistent with Congress's purpose in enacting § 1681s-2(b)

(S. Rep. 103-209 at 6) to subject them to that statute.[4]

## II.     PLAINTIFF RAISES NO TRIABLE ISSUE OF FACT.

LNRIAG's moving papers demonstrated, with declarations from its own

representative and from representatives of the credit bureaus who were counterparties to

LNRIAG's communications, that:

- LNRIAG has no accounts, transactions or experiences with consumers about

  which it communicates with credit bureaus (Johnson Decl. ¶27).  LNRIAG

  simply acts as a pass-through, collecting and transmitting information from

  publicly available records (*id*. ¶15).  The information that LNRIAG supplies to

  credit bureaus is available to the credit bureaus from sources other than

  LNRIAG, has been and is sometimes collected by the bureaus themselves (*id.*;

  Stockdale Decl. ¶7; DeGrace Decl. ¶5; Fluellen Decl. ¶12);

- LNRIAG's communications with credit bureaus are about *public records*, not

  about *consumers*; LNRIAG's communications to credit bureaus about public

  records are neither intended nor understood to be representations by LNRIAG

  that any public record is related to any specific consumer (Johnson Decl. ¶13;

---

[4] Nor would the statute, properly construed as not including public records vendors such as LNRIAG as "furnishers," leave consumers who dispute public record information in their credit reports without a remedy.  Consumer reporting agencies are responsible under the FCRA for correcting inaccurate public record information obtained through public records vendors.  *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1070 (9th Cir. 2008).

sf-2853587

Centanni Decl. ¶¶9-10, 12; Fluellen Decl. ¶¶7, 17; DeGrace Decl. ¶8; Stockdale Decl. ¶10); and

- The credit bureaus treat LNRIAG differently from acknowledged "furnishers": they pay LNRIAG for information (Centanni Decl. ¶13(b); Fluellen Decl. ¶22; Stockdale Decl. ¶19); they do not use e-OSCAR to handle public records investigation requests (Centanni Decl. ¶13(c); Fluellen Decl. ¶23; Stockdale Decl. ¶20); when consumers dispute public record information in the consumers' credit files, they do not always route investigation requests to the vendor that originally supplied the public record information that they have related to the consumer (Centanni Decl. ¶13(a); Fluellen Decl. ¶21; Stockdale Decl. ¶18; Johnson Decl. ¶¶30-32); they do not provide identity theft notices to LNRIAG (Johnson Decl. ¶35) and they do not provide LNRIAG with a notice of obligations that consumer reporting agencies are required to provide to "furnishers" (Johnson Decl. ¶29).

With one important implied exception, plaintiff does not suggest that any of these facts are in dispute.

Plaintiff *implies* that LNRIAG communicates to the credit bureaus information that LNRIAG intended, or the credit bureaus understood, to be a representation by LNRIAG that the information relates to plaintiff. (Opp'n 2 ("LNRIAG . . . verified the foreign judgment as belonging to Plaintiff."); Opp'n 3 ("LNRIAG verified the accuracy of the state court judgments *as belonging to Plaintiff*") (emphasis added); Opp'n 13 (regulation does not "exclude LNRIAG or any entities" that "process disputes concerning

public records *relating to consumers*" (emphasis added).)  Plaintiff implies that by coding

its response as "803 – Status Not Changed," LNRIAG confirmed [bureaus'] association

of the Anoka County judgment as relating to plaintiff.[5]  (Opp'n 3.)

Plaintiff's implications are unsupported by evidence, and are explicitly

contradicted by the evidence adduced on LNRIAG's motion.  All of the parties to the

"CDV" communications — *i.e.* LNRIAG and the consumer reporting agencies —

(1) understand that LNRIAG does not represent, confirm, or otherwise indicate that a

record relates to a particular consumer; and (2) understand that the "Status Not Changed"

code means the docket status of the record at issue has not changed — this code has no

bearing on whether a record is properly associated with a particular consumer.  (Centanni

Decl. ¶¶9-10 ("Experian does not take any response code from a public records data

vendor — including a response code of 'status not changed' as the public records data

vendor's indication that Experian has properly matched the public record with the

individual named in the CDV request[.]"); Stockdale Decl. ¶16 (Trans Union; same);

---

[5] While the accuracy of what LNRIAG reported to the credit bureaus about the Anoka
County judgment is not the basis of LNRIAG's motion, the subtext of plaintiff's
opposition is that LNRIAG inaccurately described the public record in its
communications with the bureaus.  The evidence shows that this is not the case.  The
Anoka County Court docket sheet (Roy Aff. Ex. A) shows that the Anoka County Court
judgment was entered against "Mary Miller, Circle Pines MN" on June 1, 2009.  In
another suit filed in this Court, plaintiff has averred that the Anoka County Court
judgment was in fact entered against her, albeit as the result of an error by a collection
law firm.  *Miller v. Gurstel, Staloch & Chargo, P.A.*, D. Minn. 10-cv-00183, Complaint,
¶¶5-6, 11.  The docket sheet shows that the judgment was not vacated until
September 18, 2009.  LNRIAG's CDV responses (Roy Aff. Exs. C-E) are dated June 19,
2009 and July 1, 2009.  Those responses correctly showed that as of those dates, there
was a judgment of record in the Anoka County Court against Mary Miller of 225
Moonlite Drive, Circle Pines MN.

Fluellen Decl. ¶16 ("Status Not Changed" code "relates to the status of the debt and not Equifax's association of the debt with a particular consumer . . .").)  The uncontroverted facts thus demonstrate that LNRIAG does not, by its response code of "Status Not Changed" nor any other means, "verify" that a particular public record relates to a particular consumer.  Plaintiff's implication does not create a triable issue of fact.  *See Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1196 (9th Cir. 2006) (affirming summary judgment that third party "could not foist upon the contracting parties a meaning favorable to it and unknown to them[.]").

## III.   PLAINTIFF'S RULE 56(F) REQUEST IS BOTH INCONSISTENT WITH HER OWN ARGUMENT AND FACIALLY DEFICIENT.

Plaintiff does not oppose LNRIAG's motion on the ground that any fact on which either she or LNRIAG relies may be disputed.  Her opposition is based exclusively on the argument that since LNRIAG is a "person" that supplied information to a consumer reporting agency, LNRIAG may be sued under § 1681s-2(b).  Plaintiff correctly states that the fact that LNRIAG provided information to consumer reporting agencies is not in dispute.  (Opp'n 7.)  Plaintiff argues that all the evidence LNRIAG has adduced "need not be considered by the Court."  (*Id.*)

Despite her substantive argument, plaintiff makes a *pro forma* request under Rule 56(f) to defer resolution of this matter until after she has deposed LNRIAG's declarants.  (Opp'n 15.)  Plaintiff does not explain why more or different evidence of a type she claims to be irrelevant would aid her cause.  Nor does plaintiff specify any such irrelevant point that further discovery might show to be in dispute.

Plaintiff's request should be denied.  *See*, *e.g.*, *Willmar Poultry Co. v. Morton-Norwich Prods.*, *Inc.*, 520 F.2d 289, 297 (8th Cir. 1975) (Rule 56(f) requires party "affirmatively demonstrat[e] why [she] cannot respond to a movant's affidavits . . . and how postponement of a ruling on the motion will enable [her] to rebut the movant's showing of the absence of a genuine issue of fact."); *Shqeirat v. U.S. Airways Group*, *Inc.*, 645 F. Supp. 2d 765, 794 (D. Minn. 2009) (same).  Plaintiff's request does not meet this standard.  *See*, *e.g.*, *Duffy v. Wolle*, 123 F.3d 1026, 1040 (8th Cir. 1997) (Rule 56(f) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that [her] opposition is meritorious.").

## CONCLUSION

Plaintiff's opposition misconstrues the law and fails to raise any triable issues of fact.  Plaintiff also fails to demonstrate under Rule 56(f) that further discovery is warranted.  The FCRA's statutory scheme and structure, legislative history, interpretations by the agencies charged with implementing the statute, and evidence of industry practice all demonstrate that LNRIAG may not be held liable as "furnisher" within the meaning of § 1681s-2(b) as plaintiff asserts here.  LNRIAG is therefore entitled to summary judgment.

Dated:  June 9, 2010                                MORRISON & FOERSTER LLP


                                                    By:   /s/ James F. McCabe
                                                    James F. McCabe

James F. McCabe (*Pro Hac Vice*)
James R. McGuire (*Pro Hac Vice*)
Rebecca Snavely Saelao (*Pro Hac Vice*)
Adriano Hrvatin (*Pro Hac Vice*)
425 Market Street
MORRISON & FOERSTER LLP
San Francisco, California  94105
Telephone:  415.268.7000
Facsimile:  415.268.7522

Joseph G. Schmitt (Atty. Reg. No. 231447)
Kari L. Hainey (Atty. Reg. No. 311455)
NILAN JOHNSON LEWIS P.A.
400 One Financial Plaza
120 South Sixth Street
Minneapolis, Minnesota  55402
Telephone:  612.305.7500
Facsimile:  612.395.7501

Attorneys for Defendant LexisNexis Risk &
Information Analytics Group Inc.

sf-2853587